## EL PUEBLO *v.* BORRÁS.

### APELACIÓN procedente de la Corte de Distrito de Humacao.

No. 22. Resuelto en noviembre 24, 1905

APELACIÓN.—NOTAS TAQUIGRÁFICAS.—PLIEGO DE EXCEPCIONES.—RELACIÓN DE HECHOS.—Las notas tomadas por el taquígrafo durante el juicio no deben formar parte de la transcripción de autos para la apelación, ni pueden usarse en substitución de un pliego de excepciones ó relación de hechos.

ID.—OBJECIONES CON RESPECTO Á LA PRUEBA.—Cuando se hiciere objeción á una prueba por el fundamento de que es insuficiente, deberá expresarse en qué sentido es insuficiente dicha prueba.

ID.—OBJETO DE LAS EXCEPCIONES.—Uno de los objetos de las objeciones y excepciones es llamar la atención de la parte contraria y del Tribunal, con respecto á los errores que puedan haberse cometido, á fin de darles una oportunidad de corregirlos antes de que termine el juicio.

ID.—PLIEGO DE EXCEPCIONES.—Las objeciones y excepciones deben incluirse en un pliego de excepciones, á fin de que el Tribunal Supremo pueda conocer de ellas al resolver la apelación; á falta de tal pliego, se presumirá que la sentencia es correcta y que el demandante ha probado los hechos necesarios para justificar su demanda.

OBLIGACIONES.—CLÁUSULA PENAL.—Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse á su tenor, y en aquellos casos en que existiere una cláusula penal, la pena substituirá á la indemnización de daños y perjuicios y al abono de intereses, salvo pacto en contrario.

ID.—RENTAS INTERNAS.—FIANZA PARA RESPONDER DEL CUMPLIMIENTO DE LAS LEYES DE RENTAS INTERNAS.—Las fianzas exigidas por el Tesorero de Puerto Rico de acuerdo con el art. 358 del Código Político, ó sea para garantizar la

fiel observancia de las leyes de rentas internas, no tienen por objeto responder solamente de los daños y perjuicios *reales y justificados* que el Gobierno hubiere sufrido, y en los casos de infracción de cualquiera de las condiciones expresadas en dichas fianzas, los fiadores serán responsables del *importe total* que en ellas se hubiere fijado, toda vez que el exigir el fiel cumplimiento de todas las estipulaciones consignadas en dichas fianzas envuelve un castigo impuesto á los infractores de la ley.

Id.—FACULTADES DEL TESORERO DE PUERTO RICO.—El Tesorero de Puerto Rico tiene amplias facultades para exigir una fianza á todo fabricante en Puerto Rico, limitando el importe de la misma al cincuenta por ciento del valor de sus manufacturas anuales.

Id.—ACCIÓN CIVIL Y CRIMINAL.—Como el ejercicio de la acción criminal no impide el de la civil, el hecho de que una persona haya sido condenada al pago do una multa por infracción de las leyes de rentas internas, no es obstáculo á una demanda para exigir el pago del *importe total* de una fianza prestada por la misma persona para garantizar el fiel cumplimiento de las disposiciones de aquellas leyes.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. López Landrón.*

Abogado del apelado: *Sr. Rossy, Fiscal.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

El demandante, ó sea El Pueblo de Puerto Rico entabló una demanda ante el Tribunal de Distrito de Humacao contra Pascual Borrás y otros, para el cobro de mil quinientos dollars, importe de una fianza prestada por los demandados. Los hechos aparecen suficientemente de la sentencia y dictámen del Tribunal inferior, que son como siguen:

"Este asunto ha venido ante la Corté, en virtud del señalamiento hecho para este día, estando presentes, el demandante, representado por el Fiscal, y los demandados por su abogado Sr. López Landrón.

"En este caso, el Fiscal del Distrito de Humacao, como representante del Pueblo de Puerto Rico, entabla una demanda contra Pascual Borrás como principal, y Doña Juana Borrás y Don Juan Borrás y Llacer, como fiadores, sobre confiscación de la fianza prestada por estos últimos, en virtud de haber violado el Sr. Pascual Borrás la Ley de Rentas Internas y las condiciones de la fianza prestada por los fiadores á favor del Pueblo de Puerto Rico. El Sr. Fiscal alega que el Sr. Pascual Borrás, dejó de anotar ciento treinta

galones de ron en los libros sobre fabricación é importación de mercancías despachadas que, en cumplimiento de las reglas del Departamento de Tesorería, fueron entregados al Sr. Borrás, para llevar las cuentas de su alambique, violando de este modo, no solamente la ley, sino también las condiciones de la fianza prestada y firmada por sus fiadores.

"El abogado de los demandados, alega en su reconvención, que el Sr. Borrás, con motivo de haber entrado los agentes de Rentas Internas, en su fábrica, llevándose los libros y ordenando la paralización de su industria, ha sufrido los daños y perjuicios consiguientes, los cuales reclama del Pueblo de Puerto Rico.

"Resulta probado del juicio celebrado en este día, que Juana Borrás y Juan Borrás y Llacer, prestaron una fianza por Don Pascual Borrás, á favor de El Pueblo de Puerto Rico, de conformidad, entre otras, con las siguientes condiciones:

"Que dedicándose el referido Pascual Borrás á la destilación de ron, y siendo su propósito continuar en la elaboración de dicho líquido, en el término municipal de Caguas, Puerto Rico, con situación de la destilería en barrio una cuarta milla oeste de Caguas, y siendo la firma social, á cuyo nombre se elabora dicho ron, "Santa Catalina," por tanto, si el referido Pascual Borrás pagase ó mandase á pagar, como queda previsto por las leyes de Rentas Internas de P. R., de acuerdo con un acta de la Asamblea Legislativa de P. R., aprobada en enero 31 de 1901, y titulada "Un proyecto de ley para proveer de Renta al Pueblo de P. R., y para otros fines," la suma de sesenta centavos por cada galón de ron ó ron de malagueta, y la suma de ochenta centavos por cada galón ó fracción de galón de líquidos alcohólicos destilados, manufacturados y despachados de dicha destilería, para la venta ó consumo en Puerto Rico, por medio de fijación y cancelación de sellos."

"La fianza dice además:

"Y harán entrada correcta en un libro de registro de entradas y salidas, que será facilitado por el Tesorero, el número exacto de galones de ron ú otros líquidos alcohólicos destilados, que existan en dicha fábrica en la fecha en que le sea entregado dicho registro; haciendo diaria y puntualmente entradas en el Registro referido, del número de galones de ron ú otros líquidos alcohólicos destilados y manufacturados durante las veinte y cuatro horas que anteceden."

"La misma fianza dice en otro sitio:

"Permitirán á los Agentes de Rentas Internas de la Tesorería, la libre entrada en la destilería y les facilitarán la oportunidad más

amplia para inspeccionar todos los libros y cuentas corrientes, todas la existencias de ron ú otros líquidos alcohólicos destilados y de los alambiques y toda maquinaria y la libre entrada é inspección de todos los edificios y locales pertenecientes á dicha destilería, y darán contestación verdadera á todas las preguntas que se hagan por dichos agentes, con referencia á la fabricación y despacho de ron ú otros líquidos alcohólicos destilados en dicha fábrica; ó de la misma en general cumplirán completa y fielmente todas las prescripciones de las leyes de Rentas Internas de P. R., y con los reglamentos que hayan sido ó fuesen promulgados por el Tesorero de P. R. para la debida ejecución de dichas leyes de rentas internas, y de conformidad con las mismas: y además, no permitirán que el solar ó terreno en el cual dicha destilería esté situada, ni ninguna parte de dicho terreno, ni ninguna parte de dicha maquinaria, ni de la materia prima utilizada en dicha manufactura de ron ú otros líquidos alcohólicos destilados, ni ninguna existencia de ron ú otros líquidos alcohólicos destilados, sean hipotecados ni embargados durante el tiempo en que se ocupe en el ejercicio de dicha destilería, entonces, cumplidas estas prescripciones, esta obligación será nula; en caso contrario, permanecerá en vigor.''

''Después de prestada esta fianza, los Agentes de Rentas Internas, según aparece de la prueba, entraron en la fábrica de ron del Sr. Borrás, y encontraron que dicho Sr. Borrás, dejó de anotar en los libros entregados por el Tesorero, ciento treinta galones de ron que tenía en existencia, violando así, no solamente la Ley, sino los términos de la fianza prestada á favor del Pueblo de Puerto Rico.

''Respecto á la reconvención entablada por la parte contraria, ó sea por la parte demandada, consta que los Agentes de Rentas Internas entraron en la fábrica del Sr. Borrás, y por haber encontrado las violaciones de las leyes ya citadas, se posesionaron de los libros del Tesorero, haciendo constar al mismo tiempo al Sr. Borrás, que, como se llevaban los citados libros, no podía seguir fabricando ron ni otra clase de licores, y en su consecuencia fué paralizada la industria.

''Pero siendo esto un acto legal, autorizado por las reglas del Departamento de Tesorería, dichos Agentes obraron de acuerdo con la ley, y, por lo tanto, el Pueblo de Puerto Rico no es responsable de los daños y perjuicios sufridos por el Sr. Borrás. El Sr. Borrás, para hacer esa alegación contra el Pueblo de Puerto Rico, tendrá que presentarse con las manos limpias, y tendría que demostrar, además, que no ha cometido la violación ó infracción de la que se

le acusa. De modo que la Corte encuentra que no hay lugar en la demanda interpuesta para la reconvención del demandado.

"La Corte encuentra también que el demandante, el Pueblo de Puerto Rico, tiene derecho á cobrar la suma de $1.500.00 oro americano, y las costas del pleito contra los demandados, Don Pascual Borrás, Doña Juana Borrás y Don Juan Borrás y Llacer, y es ordenado que la sentencia se registre de conformidad con lo dispuesto."

El apelante consigna en su alegato tres motivos de error.

1o.— Que El Pueblo de Puerto Rico no ha probado los hechos consignados en la demanda.

2o.— Que el Pueblo de Puerto Rico no tenía derecho á cobrar el importe total de la fianza, sino solamente los daños y perjuicios sufridos por él, á consecuencia de la omisión por parte de Pascual Borrás, de anotar en su libro el exacto número de galones de ron, según lo exigía la ley.

3o.—Que los demandados han probado que debían haberse deducido de la reclamación del demandante, los daños y perjuicios por ellos sufridos.

Aunque en los autos aparece una moción, pidiendo un nuevo juicio no hay nada que demuestre que el Tribunal inferior haya dictado resolución alguna con respecto á dicha moción. En la misma moción se anuncia la apelación de la sentencia para ante este Tribunal. También constan las notas del taquígrafo con respecto á las declaraciones de los testigos, pero no está claro si forman parte de los autos. No hay pliegos de excepciones en el presente caso. El apelante no se ha valido de los métodos que, para la presentación de pruebas, en las apelaciones, están prescritas por el capítulo V del Código de Enjuiciamiento Civil sobre excepciones ó por el capítulo VI sobre nuevos juicios. La sección 214 de dicho código es un tanto ambigua en la copia inglesa, al usar las palabras "to sustain it" (para sostenerla) pero el sentido de la sección entera es suficientemente claro: "When the objection is to the insufficient of the evidence, the objection must specify the

particulars in which such evidence is alleged to be insufficient". Este es el texto inglés, omitiendo las palabras "to sustain it" (para sostenerla), que traducido al castellano, dice lo que sigue: "Cuando la excepción se basa en la insuficiencia de la prueba, la objeción deberá precisar los particulares en que se funde la alegación de la insuficiencia de la prueba". El texto español, es una traducción de las palabras (en inglés) anteriormente citadas, y no es ambiguo.

En la causa que ante nos pende, no hay ni objeción ni excepción; por lo tanto, no hay posibilidad para que este Tribunal pueda apreciar las pruebas ó determinar si el pueblo de Puerto Rico ha probado su causa, según se alega. No consta nada en los autos, que demuestre que los apelantes hayan presentado á la corte inferior, objeción alguna fundada en la insuficiencia de la prueba. El resto de la sección 214 excluye la idea de que las notas del taquígrafo formen parte de los autos, y dice: "sólo se expondrá lo sustancial de las notas de las pruebas, tomadas por el taquígrafo".

Uno de los fines de las objeciones y de las excepciones es el de notificar errores á la parte contraria y al Tribunal, para que tengan una oportunidad para la corrección de los mismos, antes de que se resuelva la causa. Toda intención debe interpretarse á favor de la sentencia, y debe estimarse que El Pueblo de Puerto Rico ha probado suficientemente los hechos consignados en su demanda.

Técnicamente la misma razón pudiera aplicarse al segundo motivo de error, puesto que no hay nada en la demanda ni en la sentencia, que demuestre que la suma cobrada no era el importe de los daños y perjuicios sufridos por El Pueblo de Puerto Rico; pero como el fiscal en su alegato é informe oral, admitió que el valor de los sellos debidos, era mucho menos que mil quinientos dollars, procederemos á considerar la cuestión.

Tomando el texto de la fianza literalmente, no puede haber duda de que dice: que si la persona á cuyo favor se da la fianza, infringe cualquiera de sus estipulaciones, entonces el importe total mencionado en dicha fianza, es debido y pagadero por los fiadores. Hay cosas estipuladas en la fianza, en cuyo caso, si Borrás hubiese faltado en el cumplimiento de las mismas, hubiese sido muy difícil si no imposible, para el Gobierno, de demostrar perjuicio alguno. Por ejemplo: que el principal, ó sea la persona á cuyo favor se da la fianza, anotará en el registro la fecha y el importe de cada compra de sellos de rentas internas, y el lugar en donde los compró; que permitirá á los agentes de Rentas Internas de la Tesorería la libre entrada en la destilería y les facilitará la oportunidad más amplia para inspeccionar todos los libros y cuentas co rrientes, todas las existencias de ron ú otros líquidos alcohólicos destilados, y de los alambiques y toda maquinaria, y la libre entrada é inspección de todos los edificios y locales pertenecientes á dicha destilería. etc. No sería fácil determinar los daños y perjuicios procedentes de una violación de disposiciones como las citadas.

La sección 1058 del Código Civil dispone:

"Las obligaciones que nacen de los contratos, tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos."

La sección 1120 dispone: que

"En las obligaciones con cláusula penal, la pena sustituirá á la indemnización de daños y al abono de intereses en caso de falta de cumplimiento, si otra cosa no se hubiese pactado."

Si estos preceptos han de seguirse, entonces no puede haber duda de que el Tribunal inferior no incurrió en error, al dictar sentencia para el pago de la suma total. Nosotros no podemos estar de acuerdo con el abogado del apelante en que la fianza esté designada solamente para

responder de los daños y perjuicios reales y probables que el Gobierno pudiera sufrir. La forma en que fué redactada, sería suficiente para demostrar lo contrario; pero cuando se tiene presente que la fianza es dada para la protección de Rentas Internas entonces se hace evidente que el cumplimiento de sus disposiciones fué designado como castigo y advertencia, como sucede generalmente con las fianzas dadas de acuerdo con la ley. *Dorsheimer* v. *United States,* 7 Vallace 173; *Clark* v. *Barnard* 108 U. S. 454 et seq.

La sección 358 del Código Político es la autoridad en virtud de la cual el Tesorero de Puerto Rico exigió la fianza á Borrás y á sus fiadores. Dicha sección da al Tesorero amplia facultad para exigir fianzas á los fabricantes, y limita el montante de dichas fianzas al cincuenta por ciento del valor del producto anual.

En el informe oral, se hizo referencia á la práctica de los Tribunales americanos, de limitar la reclamación del demandante, al cobro de los daños y perjuicios realmente demostrados por él. Originalmente no fué así; pero gradualmente los Tribunales de equidad impidieron que el demandante recobrase más que el importe de los daños y perjuicios sufridos por él, siendo la idea de equidad, la compensación; y los Tribunales de ley después aplicaron el mismo principio. Esto queda indicado en la causa de *Clark* v. *Barnard*, anteriormente citada, en cuya página 457 el Tribunal dice lo que sigue:

"De consiguiente, cuando la ley ha impuesto una pena ó confiscación de bienes sobre la comisión ú omisión de ciertos actos, los Tribunales de equidad no intervendrán para mitigar la pena ó confiscación, si han sido incurridos; porque sería en contravención de la expresión directa de la voluntad legislativa."

En la causa de *Dorsheimer* v. *United States,* el tribunal dice:

"El objeto de las penas impuestas á las personas que tratan de

defraudar las Rentas públicas, es de efectuar el cobro de los derechos é impuestos. Ellas causan un efecto *in terrorem* á las personas á cuyos escrúpulos de conciencia no son suficientes para equilibrar sus esperanzas de lucro.''

También se indicó en el informe oral, y se admitió por el fiscal que Borrás había sido declarado culpable del delito que se le imputaba y que se le había impuesto una multa de quinientos dollars, alegándose que la acción criminal debía ser un impedimento para la acción civil. La sección 2 del Código de Enjuiciamiento Civil dice:

"Cuando la violación de un derecho permita el ejercicio de ambas acciones, la Civil y la Criminal, el derecho de ejercer la una, no impide el derecho de ejercer la otra.''

El mismo principio se expresa en Bishop's New Criminal Law, Vol. 1, Section 266, paragraph 3;

"Uno que ha sufrido criminalmente toda la pena, no puede, en un procedimiento civil, alegar este hecho ó como impedimento, ó, como ordinariamente sucede, en mitigación, del pago de daños y perjuicios.''

En la citada obra, también se procede á demostrar las limitaciones de esta doctrina; pero dichas limitaciones no afectan á la causa de que se trata. Y la doctrina ha sido enunciada por Bishop, en la sección 990.

El tercer motivo de error no puede ser considerado por nosotros, por las mismas razones que se han consignado en la discusión del primer motivo de error. Nosotros creemos que el Tribunal inferior no incurrió en error, al decir que Borrás, para poder entablar una reconvención, tendría que comparecer ante el Tribunal, con las manos limpias. Además, no comprendemos como Borrás pudiera tener una acción contra el pueblo de Puerto Rico con motivo de los actos de sus agentes, cuyos actos eran contrarios á la ley. Dicho Borrás tendría que proceder contra ellos. Tampoco podría en esta demanda que

ha sido entablada contra él y sus fiadores, presentar una reclamación individual, que pudiera tener contra el demandante.

Por estas razones debe confirmarse la sentencia del Tribunal inferior.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados, Hernández, Figueras y MacLeary.