SYLVIA ESTHER LÓPEZ RIVERA ET AL., demandante y recurrente, *v.* FÉLIX MANUEL MATOS GARCÍA, demandado y recurrido.

*Número*: R-71-198      *Resuelto*: 23 de octubre de 1973

*Rafael J. Baragaño Amadeo*, abogado de la recurrente; *Efraín F. Crespo*, abogado del recurrido; *Faustino R. Aponte, William F. Riefkohl, Alfonso Miranda Cárdenas* y *Julio César Rivera, amici curiae*.

EL JUEZ ASOCIADO SEÑOR MARTÍNEZ MUÑOZ emitió la opinión del Tribunal.

El la acción de filiación instada en el Tribunal Superior, Sala de Arecibo, por Sylvia Esther López Rivera, como madre con patria potestad del menor Yiovani López, nacido el 14 de abril de 1969, alegose que éste fue procreado allá para el mes de julio de 1968 producto de las relaciones sexuales que sostuvo aquella con el demandado Félix Manuel Matos García en Arecibo y en Utuado; que el demandado se ha negado a

reconocerlo como hijo y a proporcionarle alimentos como padre; y termina solicitando una declaración judicial de status de hijo del demandado para todos los efectos de ley.

Emplazado el demandado compareció en autos, negó los hechos esenciales de la demanda y adujo la defensa de cosa juzgada basada en la siguiente alegación:

"Alega además la parte demandada que en el presente caso se determinó por sentencia del Honorable Tribunal de Distrito, Sala de Utuado, que el demandado no es el padre del menor objeto del presente pleito, por lo que la parte demandante está impedida de demandar en la presente acción y asimismo es cosa juzgada el hecho de la paternidad."

Considerando el tribunal a quo que de prosperar esta defensa tendría el efecto de disponer del caso sin más, instruyó a las partes que presentaran memoriales con miras a considerar el planteamiento antes de proseguir los trámites del caso, una vez fuese unida a los autos copia certificada de la sentencia del Tribunal de Distrito, Sala de Utuado, en que basa el demandado su defensa. Los memoriales de las partes y la copia de la sentencia fueron radicados. Es esta una forma impresa de un "Acta y Resolución" suscrita por el Hon. Héctor Abreu, Juez del Tribunal de Distrito, Sala de Utuado, en el caso Criminal Núm. 69-587, que siguió el Pueblo de Puerto Rico contra Félix M. Matos García, Barrio Salto Abajo de Utuado, P.R., por infracción al Art. 263 del Código Penal, según enmendado por la Ley Núm. 10 del 16 de mayo de 1966, sobre abandono de menores. 33 L.P.R.A. sec. 991. En su parte pertinente lee así:

*"Acta y Resolución*

De conformidad con lo dispuesto en el inciso (c) de la Ley Núm. 10 del 16 de mayo de 1966, el día 2 de diciembre de 1969 este Tribunal le concedió un término al acusado de epígrafe para contestar las alegaciones de la denuncia que motivó el caso.

El día 23 de diciembre de 1969, fecha fijada para hacer alegación, compareció dicho acusado asistido del Lcdo. Efraín

Crespo negando la paternidad del menor envuelto y haciendo alegación de no culpable del delito de abandono de menores que se le imputa. Estando el Pueblo de Puerto Rico representado por el Fiscal Luis E. Jiménez Reverón, según nombramiento al efecto, se procedió a la vista del caso.

Luego de estudiada la prueba desfilada este Tribunal dicta la siguiente

### RESOLUCIÓN

[xx] Que el acusado de epígrafe *no es el padre* del menor *YIOVANI LOPEZ,* y por consiguiente lo absuelve libremente."

Sustentando el criterio de que entre la causa por abandono de menores por infracción al Art. 263 del Código Penal seguida contra Matos García, que culminó en la reseñada "Acta y Resolución", y la acción civil de filiación en trámite contra aquél hay identidad de partes, de cosa y de causa de acción, el juez de instancia declaró con lugar la defensa de cosa juzgada y dictó sentencia desestimando la demanda.

Decidimos revisar. Posteriormente accedimos a una solicitud de cuatro abogados para intervenir como *amici curiae,* fundada ésta en el efecto que pueda tener cualquier dictamen nuestro sobre planteamientos jurídicos similares, concordes con el dictamen del juez a quo y que alegan haber formulado en otros casos ante los tribunales de instancia.

Presentado el alegato de los interventores, éstos llaman la atención del Tribunal, en una moción informativa, al hecho de que el abogado de la recurrente no adhirió el sello forense a su solicitud de revisión y el efecto de esta omisión sobre nuestra jurisdicción para entender en el recurso. Procedemos, pues, a examinar y a resolver primero esta cuestión previa.

El abogado de la demandante-recurrente le ha estado representando desde el inicio del pleito. Dicho abogado canceló el sello forense en la demanda y en otro documento posterior dentro del pleito. Al solicitar la revisión de la sentencia adversa, el Secretario de este Tribunal le envió una nota

llamándole la atención al abogado sobre la falta del sello forense en la petición de revisión y que debía enviar "original y 10 copias a doble espacio" de la solicitud.([1]) El abogado recurrente procedió o corregir los defectos y enviar el sello forense, ya pasado el término para solicitar revisión, de no haberse perfeccionado antes dicha solicitud.

Surge, pues, la interrogante si es un requisito de ley que el abogado cancele un sello forense en su solicitud de revisión dentro de las circunstancias de este caso.

La ley que constituyó el Colegio de Abogados de Puerto Rico, según fue enmendada por la Ley Núm. 60 del 28 de abril de 1939, dispone en su Art. 11 lo siguiente (4 L.P.R.A. sec. 783):

"Será deber de todo abogado adherir al primer escrito que presente en cualquier acción o procedimiento judicial un sello que el Colegio adoptará y expedirá por valor de un (1) dólar *y hasta tanto se hubiere adherido dicho sello no podrá radicar ese escrito.*" (Énfasis nuestro.)

La frase final que hemos enfatizado fue añadida a dicho artículo por virtud de la Ley Núm. 60 del 28 de abril de 1939. Fue en *Iturrino* v. *Corte*, 50 D.P.R. 944 (1937), resuelto antes de la enmienda, que por primera vez tuvimos ocasión de considerar el sello forense en lo relativo al requisito de ser adherido en el primer escrito de todo abogado en cualquier acción o procedimiento judicial. Consideramos allí la validez de una orden del juez inferior disponiendo la no radicación por el Secretario del Tribunal de una moción presentada por un abogado, designado de oficio en un caso criminal, por no haberse adherido a la misma el sello forense a que se refiere

---

([1]) Es costumbre de la Secretaría de este Tribunal llamar la atención a los abogados cuando sus escritos adolecen de ciertos defectos, no se acompañan las copias reglamentarias, falta del sello forense, las copias no están claras, etc. En muchas ocasiones, como en el caso de autos, se utiliza una forma impresa en la que se enumeran una serie de fallas con un espacio al calce para indicar el defecto y se le llama la atención del abogado para que la corrija.

dicho artículo. Al revocar la orden sostuvimos que, tal como estaba redactado el artículo, la omisión de cancelar el sello forense en un escrito ante el mismo tribunal de instancia, primero que radicaba el abogado en cuestión, no conllevaba la nulidad del escrito. Nos basamos entonces que el artículo imponía una obligación al *abogado* y no a la parte; que el artículo no fijaba penalidad alguna a la parte por tal omisión; que las consecuencias de no cancelar el sello habría que buscarlas en las relaciones entre el abogado particular y el Colegio de Abogados; y que, tratándose de un abogado asignado de oficio para la defensa de un acusado, la Legislatura no tuvo la intención de imponer sellos forenses en tal caso.

Dos años después de esa decisión, la Legislatura enmendó el artículo en cuestión, añadiéndole la frase que subrayamos antes.

En el año 1950 volvió a ocupar nuestra atención las consecuencias de la no cancelación del sello forense en un escrito, ya en vigor el interdicto incorporado en la ley. *De Soto* v. *Clínica Industrial*, 70 D.P.R. 850 (1950). Se trataba en ese caso de una reclamación de salarios tramitada bajo las disposiciones de la Ley Núm. 10 de 14 de noviembre de 1917. Presentado escrito de apelación por abogados de la demandada apelante, distintos de los que condujeron su caso en el tribunal inferior, que fue el primer escrito que presentaron, no adhirieron al mismo el sello forense de un dólar adoptado por el Colegio de Abogados. Los apelados solicitaron la desestimación. El Tribunal igualmente dividido en la opinión, declaró sin lugar la desestimación. No obstante, las distintas opiniones del Tribunal tomaron en cuenta el hecho de que eran distintos los abogados que condujeron el caso de la apelante en el tribunal inferior de los que radicaron la apelación al discutir los efectos de la falta de cancelación del sello forense en apelación. Ello es muy significativo toda vez que, de haber sido los mismos abogados, no hubiese surgido la

obligación de cancelar un nuevo sello forense en el escrito de apelación.

■ La obligación del abogado de cancelar el sello forense surge una sola vez, en el primer escrito que presente y no en ningún otro posterior. Como se sabe, el escrito de apelación se presenta en la secretaría de la sección del tribunal que entendió en el caso. Regla 53.1(a) de Procedimiento Civil.([2]) Mientras sea el mismo abogado el que está representando a la parte, no es precio volver a adherir el sello, ni aún en la etapa apelativa del caso.

■ A igual conclusión llegamos en cuanto a la necesidad de adherir el sello forense en los recursos de revisión. La solicitud en estos casos se presenta en la Secretaría del Tribunal Supremo. Regla 53.1(b). El recurso es un incidente del mismo caso que se interesa revisar. Se atiende por una rama del mismo Tribunal General de Justicia. Ley de la Judicatura, 4 L.P.R.A. sec. 1 *et seq.*([3]) El caso no comienza de nuevo en el nivel de revisión, sino que tiene como punto de partida el récord producido en el tribunal de primera instancia (Regla 10(a) del Reglamento del Tribunal Supremo), el cual en mayor o menor grado es concluyente en cuanto a la evidencia y los planteamientos de derecho de las partes y en cuanto a las conclusiones de hecho del tribunal. Más aún, a solicitud de la parte apelada, o a iniciativa propia, este Tribunal, conforme a la Regla 15.1(g) del Reglamento, puede disponer que una

---

([2]) Esta Regla cubre lo dispuesto en el procedimiento anterior bajo el Art. 296, hoy derogado, del Código de Enjuiciamiento Civil, el cual disponía que el escrito se le entregaba al "secretario de la corte en que fue dictada o registrada la sentencia o providencia apelada."

· ([3]) "El poder judicial del Estado Libre Asociado de Puerto Rico residirá en un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración, compuesto por el Tribunal Supremo como tribunal de última instancia y por el Tribunal de Primera Instancia, los que conjuntamente constituirán el Tribunal General de Justicia.

"El Estado Libre Asociado de Puerto Rico queda por la presente constituido en un solo distrito judicial, sobre todo el cual el Tribunal General de Justicia ejercerá su poder y autoridad."

apelación civil se tramite y resuelva como un recurso de revisión, siempre que el escrito haya sido presentado en tiempo y esté fundamentado, cuando surja que no hay planteada o resuelta una cuestión constitucional sustancial. Huelga decir que en esta situación tampoco es necesario adherir un sello forense al escrito de apelación considerado ya como un recurso de revisión, cuando el abogado que lo presentó es el mismo que representó a la parte apelante desde el principio.

Resolvemos que, siendo el abogado de la recurrente el mismo que la representa desde el comienzo del pleito en la sala de instancia, no venía obligado a adherir en su solicitud de revisión el sello forense adoptado por el Colegio de Abogados.

Pasamos a considerar los méritos de la defensa de cosa juzgada, invocada por el recurrido y adoptada por el juez inferior, como base de la sentencia recurrida. Recogiendo en una síntesis el pensamiento del juez, se dice en la parte *in fine* de la sentencia lo siguiente:

"Entendemos que en lo resuelto hoy le damos vitalidad y contenido a todo lo que encierra el Art. 263 del Código Penal según enmendado, al sacarlo de la cárcel del clima de precepto de tipo criminal que muchos Tribunales le han endilgado en perjuicio del ciudadano que se ve obligado a relitigar la paternidad como hecho en dos foros como cuestión de norma. La protección que se le debe a un menor para que reclame a quien imputa es su padre no puede magnificarse de tal manera que sea tan opresivo al ciudadano que, contrario a lo que ocurriría en cualquier otro tipo de caso, tenga que ganar dos veces, en dos foros distintos, la misma controversia."

El Art. 263 del Código Penal, 33 L.P.R.A. sec. 991, (⁴) define el delito menos grave de abandono de menores. En su

---

(⁴) Para la fecha en que el recurrido fue procesado ante el Tribunal de Distrito, Sala de Utuado, dicho artículo leía como sigue:

"(a) Todo padre o madre que voluntariamente y sin excusa legal dejare de cumplir con la obligación que la ley le impone de proveerles alimentos a sus hijos, incurrirá en delito menos grave.

"(b) Cuando la paternidad se acepte por el denunciado ante el Tribunal antes de comenzar el juicio, y de resultar el denunciado culpable

apartado (c) establece el procedimiento cuando el acusado niega la paternidad; se fija un plazo al acusado para formular alegación e inmediatamente se celebrará un juicio en el cual se seguirán las reglas para la presentación de evidencia; dentro del quinto día de haberse oído la prueba el juez resolverá sobre la paternidad y de resultar probada ésta, levantará un acta al efecto y dictará la resolución correspondiente fijando, además, la cuantía que por concepto de alimentos

de abandono, el Tribunal fijará mediante resolución una suma razonable por concepto de alimentos, apercibiendo al acusado que el incumplimiento de dicha resolución, sin excusa legal, podrá ser castigado como un desacato civil.

"(c) Cuando se niegue la paternidad, el Tribunal dará un plazo de no más de diez (10) días al acusado para que conteste la alegación al efecto, e inmediatamente celebrará un juicio en el cual se seguirán las reglas para la presentación de evidencia vigentes. Dentro del quinto día de haberse oído la prueba el juez resolverá sobre la paternidad y de resultar probada ésta, levantará un acta al efecto y dictará la resolución correspondiente fijando, además, la cuantía que por concepto de alimentos deberá proveerle al hijo.

"(d) Luego de los procedimientos preliminares que se establecen en los dos incisos anteriores, el caso continuará ventilándose a base de las alegaciones de abandono y el fallo recaerá sobre este extremo. El Tribunal tendrá discreción para suspender los efectos de la sentencia si lo creyere necesario para el bienestar del menor. Del fallo adverso sobre paternidad y sobre abandono el acusado podrá apelar en un solo acto. Las vistas sobre estos casos tendrán preferencia en los calendarios de los Tribunales de Apelación.

"(e) La apelación para ante el Tribunal Superior de cualquier sentencia u orden dictada bajo esta sección, no suspenderá los efectos de la resolución ordenando el pago de alimentos; Disponiéndose, que en tal caso de apelación el acusado vendrá obligado a depositar en la Secretaría de la Sala del Tribunal Superior para ante el cual se haya apelado las cuantías fijadas por concepto de alimentos, pero no se dispondrá de éstas hasta que recaiga el fallo en dicha Sala. Si el acusado dejare de cumplir con la consignación dispuesta, el Tribunal desestimará la apelación.

"(f) Cuando fuere firme la sentencia, el Tribunal dictará orden acompañada de copia certificada del acta de aceptación de la paternidad o de la determinación de paternidad hecha por el juez, dirigida al encargado del Registro Demográfico, para que proceda a inscribir al menor como hijo del acusado con todos los demás detalles requeridos por el acta de nacimiento, para todos los efectos.

"(g) En todas las acciones por infracciones a esta sección, incluso en las vistas sobre incumplimiento de la orden de alimentar, el interés

deberá proveerle al hijo. En su inciso (d) establece el procedimiento posterior, autoriza al juez suspender los efectos de la sentencia si lo creyere necesario para el bienestar del menor y le concede el derecho al acusado de apelar el fallo adverso.

■ El Art. 1204 del Código Civil, (⁵) 31 L.P.R.A. sec. 3343, establece de modo claro y categórico las condiciones que deben concurrir para que surta efectos la excepción de cosa juzgada. Son cuatro las condiciones exigidas, a saber: *la más perfecta identidad* entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. No basta la concurrencia parcial de identidades, sino la integración total de las enumeradas en dicho artículo.

En el pasado, hemos reconocido que dicha defensa tiene bien definidas excepciones en ley, y de orden equitativas; *Zambrana v. Tribunal Superior,* 100 D.P.R. 179 (1971); *Figueroa v. Municipio de San Juan,* 98 D.P.R. 534 (1970); *Millán v. Caribe Motors Corp.,* 83 D.P.R. 494 (1961); cuando ha habido envueltas consideraciones de orden público, *Garzot v. Tribunal Superior,* 90 D.P.R. 359, 365 (1964);

público estará representado por un fiscal de distrito, su auxiliar o cualquier fiscal especial designado por el Secretario de Justicia, su auxiliar, o un fiscal especial privado designado según dispone la sec. 102 del Título 3 de las Leyes de Puerto Rico Anotadas.

"(h) A los efectos de determinar la paternidad, el Tribunal de Distrito tiene jurisdicción concurrente con el Tribunal Superior de Puerto Rico."

En virtud de la Ley Núm. 83, del 30 de mayo de 1972, el Art. 263 fue enmendado suprimiéndose la frase "pero no se dispondrá de éstas hasta que recaiga el fallo en dicha Sala." al fin de la primera oración del inciso (e) y adicionó las segunda, tercera y cuarta oraciones. 33 L.P.R.A. sec. 991 (Suplemento Acumulativo).

(⁵) Dispone dicho artículo que:

"Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquel en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron."

Otras disposiciones estatutarias relativas a la materia de cosa juzgada están contenidas en los Arts. 59 y 62 de la Ley de Evidencia, 32 L.P.R.A. secs. 1793 y 1796, y en las Reglas 6.3 y 7.5 de las de Procedimiento Civil.

*Pérez* v. *Bauzá*, 83 D.P.R. 220 (1961); *Feliciano Ruiz* v. *Alfonso Develop. Corp.*, 96 D.P.R. 108 (1968); *cf. Souchet* v. *Cosío*, 83 D.P.R. 758, 763–764 (1961); y *Sucn. Zayas Berríos* v. *Berríos*, 90 D.P.R. 551 (1964); o cuando la sentencia en que se funda se obtuvo por fraude, *Bolker* v. *Tribunal Superior*, 82 D.P.R. 816 (1961); o cuando se derrotan los fines de la justicia, *Viera* v. *Comisión Hípica*, 81 D.P.R. 707, 720 (1960).

Precisamente en *Pérez* v. *Bauzá*, supra, se trataba de un caso de filiación en el cual se opuso la defensa de cosa juzgada fundamentada en: (a) una sentencia en un caso civil anterior, sobre filiación, que había sido desestimado por inacción; y (b) otra sentencia en un caso por el delito de abandono de menores mediante la cual se absolvió al demandado. Sin considerar la defensa (b), porque presumimos que la defensa de cosa juzgada se hizo depender exclusivamente de la indicada bajo la (a), (⁶) y que ésta no adjudicó los méritos de la causa de acción ejercitada, consideramos apropiado apartarnos de la "rigidez" que impone la cosa juzgada no sin antes dejar expresado (pág. 226):

"Sin embargo, los tribunales se han negado a aplicar en forma inflexible la defensa de cosa juzgada cuando hacerlo derrotaría los fines de la justicia, especialmente si hay envueltas consideraciones de orden público. [Citas] Esto es particularmente cierto en los casos en que la sentencia anterior se opone a un menor de edad, que ordinariamente ha estado impedido de protegerse a sí mismo contra la conducta impropia o descuidada de su representante legal. [Cita] Según se ha expresado, la doctrina descansa en el principio básico de que debe propiciarse la terminación de litigios, pero si la aplicación rigurosa de la misma derrotaría en la práctica un derecho permeado en alguna forma del interés público, los tribunales se inclinan hacia la solución que garantice cumplida justicia, en lugar de favorecer en forma rígida una ficción de ley que obedece fundamentalmente a un principio de conveniencia y orden procesal. [Cita] En otras

---

(⁶) Véase *Pérez* v. *Bauzá*, supra, escolio (2), págs. 222–223.

palabras, la regla no es absoluta y debe siempre considerarse conjuntamente con el saludable principio de que debe dispensarse justicia en cada caso. [Cita]

Es indudable que la acción de filiación, vehículo que concede la ley ·para establecer el status familiar del ciudadano, está re= vestida de un gran interés público, y tiene hasta tangencias constitucionales si se quiere, por lo que con ello afecta la digni- dad del individuo. Precisamente el Artículo II, Sección 1, de la Constitución del Estado Libre Asociado de Puerto Rico, proclama que la dignidad del ser humano es inviolable, y define la igualdad de los hombres ante la ley, complementada con la prohibición de discrimen por motivo de *nacimiento*."

■ No merece gran esfuerzo de análisis para concluir que entre la sentencia absolutoria que se produjo en el proceso contra el acusado por infracción al delito menos grave de abandono de menores y la acción civil filiatoria iniciada en éste, no existe la concurrencia de *todas* las identidades reque- ridas a los efectos del Art. 1204 del Código Civil. El Art. 263 del Código Penal establece un procedimiento criminal que ofrece al acusado de infringirlo todas las garantías del Debido Proceso de Ley; a disfrutar del derecho a un juicio rápido y público, a ser notificado de la naturaleza y causa del cargo, a carearse con los testigos de cargo, a obtener la comparecen- cia compulsoria de testigos a su favor, a tener asistencia de abogado, y a gozar de la presunción de inocencia y del privi- legio de abstenerse a declarar y que éste no se tenga en cuenta ni se comente en su contra. El menor, por el contrario, ni su señora madre, pueden compeler al acusado a un examen de sangre, antes del juicio, ni a someterlo a examen oral me- diante deposición, ni a interrogatorios escritos, ni a formu- larle requerimiento de admisión de hechos. Tampoco tienen derecho, como tampoco lo tiene el fiscal, a una revisión de la sentencia de absolución por un tribunal de más jerarquía, derecho que sólo disfruta el acusado en caso de resultar con- victo.

752

■ · Si bien hemos resuelto que la paternidad puede ser · investigada lo mismo en casos criminales que en casos civiles, (⁷) en el caso de un acusado por infracción al Art. 263, el hecho de la paternidad tiene que establecerse más allá de duda razonable antes de que proceda una convicción. Es por esta razón básica que en nuestro derecho la filiación civil no se establece por una convicción, como tampoco se destruye por una absolución en un caso de abandono de menores. Ello se funda en el clásico principio de separación entre ambos procesos consagrado en el Art. 2 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2, que dispone:

"Cuando la violación de un derecho permita el ejercicio de ambas acciones, la civil y la criminal, el derecho de ejercer la una no impide el derecho de ejercer la otra."

Véanse *Landrón* v. *Saldaña*, 8 D.P.R. 438 (1905); *El Pueblo* v. *Borrás*, 9 D.P.R. 411 (1905); *Ramírez* v. *Morales*, 69 D.P.R. 703 (1949); *Colón* v. *Srio. de Hacienda*, 79 D.P.R. 859 (1957).

■ No debe extrañar, pues, nuestras expresiones en *Pueblo* v. *Lugo*, 64 D.P.R. 554, 567 (1945), que hoy ratificamos como norma en lo relativo al efecto de sentencias de culpabilidad o de absolución en casos de abandono de menores bajo el Art. 263 del Código Penal en los cuales la paternidad haya sido negada, sobre las acciones de filiación civil para establecer el status familiar del ciudadano:

"Escasamente tenemos que añadir que una sentencia en un caso criminal, aun en cuanto a los hechos necesariamente determinados en el mismo, no es impedimento (*bar*) por el fundamento de cosa juzgada a una acción civil posterior basada en los mismos hechos. Lo contrario es desde luego igualmente cierto. La doctrina no podría aplicarse en dichas situaciones debido a la diferencia en la partes y en el grado de la prueba requerida en casos civiles y criminales. [Citas] Aquí la absolución en el

_____

(⁷)*Pueblo* v. *Rodríguez*, 67 D.P.R. 735 (1947); *Pérez* v. *Tribunal Superior*, 81 D.P.R. 832 (1960); *Rosaly* v. *Rullán*, 86 D.P.R. 788 (1962).

primer caso criminal no operaría por ejemplo en el sentido de que la cuestión de paternidad sea cosa juzgada en una acción civil posterior de filiación."

La sentencia revisada vulnera esos principios básicos. Por los fundamentos expresados, no procede el sostener en este pleito la defensa de cosa juzgada; y, en consecuencia, *se revocará la sentencia recurrida y se devolverán los autos al tribunal de origen para la continuación de los procedimientos.*

