FRANK PLAZA RÍOS, patrono-recurrente, *v.* FONDO DEL SEGURO DEL ESTADO, asegurador-recurrido.

*Número:* O-80-509      *Resuelto:* 27 de febrero de 1981

*Lorenzo O. Cabán Arocho,* abogado del recurrente; *Calixto J. Rivera Colón,* abogado del recurrido.

PER CURIAM: Debe declararse no ha lugar la petición de revisión, por falta de jurisdicción, ya que el recurrente no solicitó reconsideración de la resolución dictada por la Comisión Industrial como lo ordena la Ley de Compensaciones por Accidentes del Trabajo. 11 L.P.R.A. sec. 12.

Es evidente que el disponer la ley que: "Cualquier parte interesada podrá presentar copias certificadas de una orden o decisión de la Comisión Industrial, de acuerdo con este Capítulo, *contra la cual se haya radicado petición de revisión y haya recaído resolución de ésta,* de la que podrá solicitarse revisión ante la Corte Suprema de Puerto Rico . . ." (bastardillas nuestras), obviamente significa haber solicitado la reconsideración de la resolución de la Comisión Industrial. ¿Qué otra cosa puede significar "contra la cual se haya radicado petición de revisión y haya recaído resolución de ésta"? Así lo entendió este Tribunal desde el año 1935, año en que se aprobó la Ley de Compensaciones por Accidentes del Trabajo. *Amenguar* v. *Comisión Industrial,* 49 D.P.R. 10 (1935). Esta interpretación en *Amenguar* ha sido sostenida en nuestro posterior pronunciamiento en *Rodríguez* v. *Comisión Industrial,* 61 D.P.R. 222 (1942).

Además, la Asamblea Legislativa ha conocido por cuarenta y seis años de nuestra interpretación del estatuto en *Amenguar,* ante, y no ha enmendado la ley con propósitos de variar dicha interpretación.

Dadas las circunstancias extraordinarias presentes en este caso, el recurrente puede acudir ante la Comisión Industrial en solicitud de relevo de la determinación que le declaró patrono no asegurado.

*Se dictará resolución de conformidad.*

El Juez Asociado Señor Díaz Cruz emitió opinión disidente a la cual se unen los Jueces Asociados Señores Rigau e Irizarry Yunqué.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz a la que se unen los Jueces Asociados Señores Rigau e Irizarry Yunqué.

San Juan, Puerto Rico, a 27 de febrero de 1981

El recurrente obtuvo una póliza de seguro obrero con el Fondo del Estado que ha sostenido por doce años([1]) pagando las primas por correo desde Mayagüez. Su empleado Ramón Vargas Lorenzo sufrió un accidente laboral el 20 febrero, 1978 y el Fondo del Seguro del Estado negó cubierta y declaró el caso como uno de patrono no-asegurado porque para esa fecha comprendida en el segundo semestre del año 1977–78 la prima vencida era de $111.10 de los que había remesado en cheque $108.52 faltando una diferencia de $2.58 que fue pagada post accidente, en cheque remitido el 13 abril, 1978. El recurrente explicó la tardanza en el pago y la deficiencia de $2.58 con prueba no contradicha recogida en la resolución de la Comisión que en lo pertinente dice:

El abogado del patrono alegó que para la fecha del alegado accidente estaban asegurados. Trajo como evidencia un cheque del 17 de febrero que se envió al Fondo del Seguro del Estado y se pagó al segundo período de tiempo. Fue depositado en el correo en febrero 17 de 1978, o sea, 3 días antes de la fecha que ocurrió el accidente. Fue recibido en marzo 12 de 1978. Se pagó la misma cantidad que se había pagado en el primer semestre de $108.51. Que aparentemente hubo un error y posteriormente se envió el remanente y eso lo notificaron el 24 de febrero de 1978 que era $111.10. Hizo constar además que el patrono lleva dos

---

([1]) Hay aparente error de transcripción en la resolución que dice "dos años".

años pagando una póliza del Fondo del Seguro del Estado y la lleva pagando por el correo.

El señor Frank Plaza Ríos, patrono en este caso, declaró que tuvo que salir a principios de octubre, aproximadamente el 17 o el 18 hacia los Estados Unidos, le notificaron que su hija había tenido un accidente y la tenían en un hospital y salió hacia donde permaneció hasta febrero más o menos que regresó a Puerto Rico. En ese transcurso le habían amputado una pierna y a eso tuvo que estar más tiempo. Su hija se llama Sandra Plaza. Durante ese tiempo su secretaria se quedó a cargo del negocio. Ella no tenía ninguna autoridad para expedir cheques. Se enteró al regresar que empezó a poner las cuentas al día, que se sentó en el escritorio a decirle "hay que hacer estos pagos" e inclusive los del Fondo del Seguro del Estado que encontró una forma y revisó el talonario de cheques y la cantidad que había enviado el otro semestre era de $108.51 y procedió a hacer el pago por la misma cantidad, y lo echó por correo como ha acostumbrado siempre durante todo el tiempo que ha estado llevando póliza con el Fondo del Seguro del Estado. Lleva pagando póliza por 12 años y los ha pagado siempre por correo y siempre el Fondo del Seguro del Estado ha cobrado los mismos hasta la fecha. Que ese pago específicamente lo cobraron.

A preguntas del Fondo del Seguro del Estado el patrono declaró que el Fondo del Seguro del Estado le envía un formulario por la cantidad que tiene que pagar. Para el segundo semestre chequeó el talonario del cheque y de ahí sacó la cantidad que había pagado anteriormente. Para la cantidad que había pagado en el primer semestre tenía un formulario pero se le había extraviado. Tenía el talonario del Fondo del Seguro del Estado donde le indicaba lo pagado del primer semestre. Que esos pagos él mismo procedió a hacerlos, o sea, se los hacen y él los firma y los manda por correo. El primer pago para el primer semestre vencía en octubre y lo envió en noviembre.

A preguntas de la Comisionada Ponente el patrono declaró que cuando se fue le había dejado a la secretaria una serie de cheques firmados en blanco para pagar en el almacén y todo porque antes de irse tenía a la mano toda esa papelería. Le firmó cierta cantidad de cheques de acuerdo a la cantidad que tenía en el banco porque no podía seguir expidiendo cheques porque no tenía fondo en el banco. Que su negocio es en ebanistería.

El abogado del patrono hizo constar que el señor Plaza tenía conocimiento de que tenía que pagar $111.10 en un recordatorio que le enviaron en 24 de febrero de 1978. De ahí fue que surgió la diferencia de los $2.58 que adeudaba al Fondo del Seguro del Estado y no sabía de dónde procedía el dinero.

Al recurrir el patrono de esta resolución el 9 de octubre, 1980 expedimos la siguiente orden:

Considerando mínima en extremo la deficiencia en el pago de la prima de seguro obrero y explicada la misma por razones atendibles, la Administradora del Fondo del Seguro del Estado tendrá un plazo hasta el 31 octubre, 1980 para mostrar causa por la que no deba revocarse la resolución recurrida y en su lugar considerar al recurrente patrono asegurado.

## I

En su escrito de oposición la Administradora del Fondo del Estado cuestiona nuestra jurisdicción por no haber el patrono recurrente solicitado reconsideración de la decisión adversa de la Comisión Industrial antes de promover su recurso de revisión ante este Tribunal. Indebidamente nuestras decisiones en *Amenguar* v. *Comisión Industrial*, 49 D.P.R. 10, 11 (1935) y *Rodríguez* v. *Comisión Industrial*, 61 D.P.R. 222 (1942) invistieron la solicitud de reconsideración con atributos de condición previa y requisito jurisdiccional. No hay base para tal aseveración ni para distinguir en esta forma la moción de reconsideración ante la Comisión Industrial de la autorizada por la Regla 47 de Procedimiento Civil. En ambas dicha alegación es opción libre de la parte y no condición precedente de revisión. Tanto en la Regla 47, como en el Art. 10 de la Ley de Compensaciones por Accidentes del Trabajo (11 L.P.R.A. sec. 11) la moción de reconsideración queda remitida al arbitrio o elección de la parte inducida por el vocablo "podrá". Provee el Art. 10 que "la Comisión *podrá* motu proprio, o a solicitud de parte interesada, reconsiderar sus decisiones; y Disponiéndose, además que en este último caso [moción de parte] la petición . . . deberá presentarse

dentro de los diez (10) días a contar de la fecha en que el interesado reciba la notificación de la decisión de la Comisión". Y en ordenamiento paralelo dispone la Regla 47 que "[l]a parte adversamente afectada por una resolución, orden o sentencia *podrá*, dentro del término de quince (15) días desde la fecha de la notificación de la resolución u orden o desde la fecha del archivo en los autos de una copia de la notificación de la sentencia, presentar una moción de reconsideración de la resolución, orden o sentencia". (Énfasis nuestro.)

Ningún ejercicio obligatorio del derecho a solicitar reconsideración aparece en el Art. 11 de la citada Ley (11 L.P.R.A. sec. 12) que establece la revisión por el Tribunal Supremo con el siguiente lenguaje:

Cualquiera parte interesada *podrá* presentar copias certificadas de una orden o decisión de la Comisión Industrial, de acuerdo con este Capítulo, contra la cual se haya radicado petición de revisión y haya recaído resolución de ésta, de la que podrá solicitarse revisión ante la Corte Suprema de Puerto Rico dentro del término de quince (15) días después de su notificación; Disponiéndose, que dicha revisión solamente podrá concederse sobre cuestiones de derecho o apreciación de prueba cuando ésta sea de carácter pericial.

Ninguna de las partes incurrirá en costas de clase alguna en la tramitación de los recursos establecidos por este Capítulo. (Énfasis nuestro.)

Nótese que la instancia de reconsideración está propiamente reglada por su nombre en el Art. 10, mientras el Art. 11 alude a una misteriosa *revisión* para la cual no se fija término alguno. "El medio más eficaz y universal para descubrir el verdadero sentido de una ley cuando sus expresiones son dudosas, es considerar la razón y espíritu de ella . . .". (Art. 19, Código Civil.) Debe rechazarse toda interpretación de la ley que conduzca al absurdo, o a la realización de "cosas inútiles y vanas". *Celis Alquier* v. *Méndez*, 18 D.P.R. 88, 93 (1912). La obligatoriedad de la moción de reconsideración

impuesta por declaración judicial ha resultado en rémora del procedimiento ante la Comisión como lo demuestra la experiencia: de 267 mociones de reconsideración del Fondo sólo prosperaron 7 para un 2.6%; y de 286 mociones de reconsideración de parte lesionada sólo prosperaron 6, para un 2%.(²) Como en el enjuiciamiento civil ordinario, la moción de reconsideración ante la Comisión Industrial es actuación puramente volitiva; es recurso procesal a la disposición de quien quiera usarlo, esencialmente optativo, como lo es el de revisión al Supremo. Toda vez que la moción de reconsideración a la Comisión Industrial tiene su propia virtualidad que no se gobierna por las Reglas de Procedimiento Civil, su interposición suspende el término para recurrir al Tribunal Supremo en todo caso, independientemente de que se deniegue de plano, se acoja para decisión, se señale para vista o se tome cualquier otra providencia para su adjudicación.

En cuanto resuelven lo contrario debe cesar el valor de precedente de *Amenguar* y *Rodríguez*, supra. Tenemos jurisdicción para conocer de la solicitud de revisión.

## II

Para que el asegurado pueda disfrutar de la cobertura de riesgo que le ofrece su póliza con el Fondo del Estado deberán darse dos condiciones: (1) rendir a tiempo una planilla o declaración de la nómina; (2) pagar la prima correspondiente en los plazos y cantidades fijados por el Administrador.(³) En este caso median circunstancias extraordinarias

---

(²) Estadística sobre Resoluciones de mociones de reconsideración, durante el año natural de 1980, suplida por la Comisión Industrial.

(³) Así se deriva del Art. 27 de la Ley de Compensaciones por Accidentes del Trabajo (11 L.P.R.A. sec. 28) que en parte ordena:

"El seguro de cada patrono por el Estado comenzará a regir inmediatamente después de que haya sido archivada en las oficinas del Administrador del Fondo del Estado su nómina o estado acompañado del importe de la cuota que corresponda al tanto por ciento de los jornales declarados en dicho estado, de acuerdo con los tipos fijados por el Administrador; Disponiéndose, que cualquier accidente que ocurra antes de verificarse el pago

que unidas a la insignificancia de la deficiencia conducen a una solución equitativa que reduzca a su correcta dimensión el incumplimiento del patrono en el pago completo de la prima antes de ocurrir el accidente. Se produce esta controversia dentro de un estatuto remedial y un sistema dirigido a servir la justicia social, por lo que sus própositos han de ser servidos evadiendo el rigor de exigencias extremas y quitando a sus participantes de la áspera disciplina en circunstancias *de minimus*. La Administradora recurrida arguye que esta situación no se hubiera producido y el Fondo del Estado hubiera mantenido cubierta la operación del patrono de haber éste solicitado prórroga. En el margen mínimo a que se contrae el caso y atendidas las razones que justificaron la demora, el pago de la pequeña deficiencia iguala en su efecto final la eficacia de una prórroga y satisface en principio el propósito perseguido en los términos de vencimiento de la prima.

Debió expedirse el auto y revocarse la resolución recurrida ordenándose al Fondo del Seguro del Estado que extienda cubierta de patrono asegurado por el accidente que dio lugar a este litigio.

---

será considerado como un caso de patrono no asegurado a menos que el patrono verifique el pago dentro del término fijado por el Administrador del Fondo del Estado, en los cuales casos el seguro empezará a regir desde la fecha en que el patrono archivó la nómina o estado, en la oficina del Administrador."