JULIO ENRIQUE FRANCO PIÑEIRO ET AL., lesionado y recurrente, *v.* J. PÉREZ & CÍA., INC. y FONDO DEL SEGURO DEL ESTADO, recurridos.

*Número:* CE-86-435          *Resuelto:* 30 de abril de 1990

*Héctor L. Moreno Luna*, abogado del recurrente; *José Luis Verdiales Morales* y *José J. Santiago*, de *Fiddler, González & Rodríguez*, abogados de J. Pérez & Cía., Inc., recurrido; *Francisco Falú Lebrón*, abogado del Fondo del Seguro del Estado, recurrido.

## SENTENCIA

Revisamos la determinación de la Comisión Industrial de Puerto Rico que extiende la cubierta de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 1 *et seq.*, al patrono recurrido y que revoca la determinación previa del Fondo del Seguro del Estado que lo declara no asegurado.

I

J. Pérez, & Cía., Inc. (J. Pérez, Inc.) es un patrono que desde 1923 se dedica al negocio de venta de comestibles. Desde ese año ha mantenido vigente una póliza para cubrir a sus empleados contra accidentes del trabajo con el Fondo del Seguro del Estado (F.S.E.). En todo momento, tanto J. Pérez, Inc. como el F.S.E., respectivamente, han realizado los pagos y cobros de las primas del seguro obrero a través del correo postal.

*El 10 de junio de 1982* el F.S.E., como parte del procedimiento de cobro, envió a J. Pérez, Inc. la referida notificación de cobro de primas de seguro obrero para 1981–1982 y primer semestre de 1982–1983. En la misma le indicó la liquidación final de primas para 1981–1982 y la prima preliminar para 1982–1983. La liquidación final incluía un balance adicional montante a la suma de $1,107.51. El cincuenta por ciento (50%) de la prima preliminar ascendía a $3,540.75, que sumados al balance adicional totalizaban $4,648.26. El F.S.E. concedió a J. Pérez, Inc. hasta el *20 de octubre de 1982* para el pago de la suma referida; *le apercibió que "la falta de pago total de la prima dentro del término fijado o su prórroga surtirá el efecto de suspender la efectividad de su póliza".* Caso Núm. CE-86-435, Parte I, Solicitud de revisión, Apéndice 7. Le concedió, además, hasta el 31 de enero de 1983 para el pago del restante cincuenta por ciento (50%) de la prima para 1982–1983 ($3,540.75). *J. Pérez, Inc. no solicitó prórroga para pagar.*

El *17 de noviembre de 1982* J. Pérez, Inc. envió al F.S.E. un pago parcial por la suma de $3,540.75, tras el cual quedaba al descubierto un balance adicional de $1,107.51 de la liquidación final para 1981–1982.

El *24 de diciembre de 1982*, sin que aún J. Pérez, Inc. hubiera cubierto el balance adicional de la liquidación final para 1981–1982, *el obrero peticionario*, quien trabajaba como gondolero de J. Pérez, Inc., sufrió un accidente mientras desempeñaba dichas labores. El *29 de diciembre de 1982* J. Pérez, Inc. envió un cheque por la cantidad de $4,648.26 para completar el pago de las primas. Como resultado del accidente, el obrero

recurrente se encuentra total y permanentemente incapacitado, tanto para trabajar como para atender sus necesidades personales. El F.S.E., luego de darle el tratamiento correspondiente, dio de alta definitiva al obrero el 20 de junio de 1983. El *30 de septiembre de 1983* el F.S.E. emitió una decisión mediante la cual otorgaba al recurrente una incapacidad total permanente con diagnóstico de *status* postcraneotomía por hematoma intracraneal post traumático y síndrome orgánico mixto y atópico.

El *10 de abril de 1984* el F.S.E. certificó que J. Pérez, Inc. no adeudaba cantidad alguna por concepto de primas para 1982–1983.

El 5 de julio de 1985 el Administrador del Fondo del Seguro del Estado (Administrador) notificó al obrero peticionario y a J. Pérez, Inc. su decisión mediante la cual declaraba a J. Pérez, Inc. patrono no asegurado en relación con el accidente de 24 de diciembre de 1982. Según la decisión, "el referido patrono de acuerdo con nuestros récords no mantenía su póliza en vigor. Pagó la prima que se le fijó para el primer semestre del año 1982–83 por la cantidad de $4,648.26 el día 29 de diciembre de 1982 y el término de pago fijado por el Administrador expiró desde el 20 de octubre de 1982". Caso Núm. CE-86-435, Parte I, Solicitud de revisión, Apéndice 10.

En dicha decisión se le advertía a las partes de su derecho a apelar tal decisión ante la Comisión Industrial de Puerto Rico (la Comisión) dentro del término de treinta (30) días después de notificada. Art. 10 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 11. J. Pérez, Inc. *no apeló ante la Comisión en el término de ley.*

El *5 de agosto de 1985*(1) el obrero peticionario y su familia presentaron demanda de daños y perjuicios ante el Tribunal

---

(1) En esta fecha venció el término de treinta (30) días desde la notificación de la decisión del Administrador del Fondo del Seguro del Estado (Administrador) para apelar a la Comisión Industrial de Puerto Rico (la Comisión). Ese día advino final y firme la decisión del Administrador. De ahí comienza a correr el término de noventa (90) días que señala la ley para que el Administrador se subrogue en los derechos del obrero. Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 32; *Gallart Mendía v. González Marrero*, 95 D.P.R. 201, 205 (1967).

Superior, Sala de Arecibo, contra J. Pérez, Inc. Ésta contestó la demanda.

El *1ro de octubre de 1985* el Sr. Humberto Pérez, oficial de J. Pérez, Inc., escribió una carta a la División de *Status* Patronal del F.S.E. (la División) para solicitarle que "revisara administrativamente" la decisión del Administrador donde declaraba a J. Pérez, Inc. patrono no asegurado. El 4 de octubre del mismo año, la División contestó esta carta y le indicó que no podía acceder a tal solicitud de revisión administrativa.

El *14 de octubre de 1985*, esto es, ciento un (101) días luego de notificada la decisión del Administrador, J. Pérez, Inc. presentó ante la Comisión un escrito de apelación para solicitar que la declarase patrono asegurado. El 28 de octubre de 1985 el obrero peticionario se opuso a la apelación *alegando que la Comisión carecía de jurisdicción*. El patrono replicó a la oposición alegando que el obrero carecía de capacidad jurídica para comparecer ante la Comisión.

El *13 de marzo de 1986* el F.S.E. le notificó mediante carta al patrono que dejaba sin efecto su decisión previa de patrono no asegurado.

El *8 de abril de 1986* la Comisión celebró una vista a la cual comparecieron el F.S.E. y J. Pérez, Inc. *El peticionario no fue notificado de la vista*. El patrono J. Pérez, Inc. y el F.S.E. estipularon los hechos a base de los cuales la Comisión resolvió revocar la decisión del Administrador (de 5 de julio de 1985) que declaró a J. Pérez, Inc. patrono no asegurado. *Esta Resolución de 15 de abril de 1986 no fue notificada al peticionario*, quien se enteró de la resolución de la Comisión cuando J. Pérez, Inc. le entregó la misma en una vista del pleito de daños y perjuicios señalada para discutir la procedencia de una solicitud del patrono de una sentencia sumaria.

El *5 de mayo de 1986* el peticionario solicitó a la Comisión la reconsideración de su Resolución de 15 de abril. La Comisión declaró no ha lugar a dicha reconsideración al resolver que el obrero no tenía capacidad jurídica para intervenir en este tipo de caso "por tratarse de una controversia entre patrono y asegura-

dor donde el obrero no es parte afectada. . . ". Caso Núm. CE-86-435, Parte I, Apéndice de la Solicitud de desestimación por falta de jurisdicción y memorando en oposición a que se expida el auto de revisión, pág. 39.

El peticionario acude ante nos y señala que erró la Comisión: (1) al resolver que el obrero no tenía capacidad jurídica para intervenir en el caso; (2) al considerar la apelación aun existiendo una decisión final y firme del Administrador, por lo que la Comisión carecía de jurisdicción, y (3) al resolver que para la fecha del accidente del recurrente J. Pérez, Inc. era un patrono asegurado.

J. Pérez, Inc. compareció ante nos mediante una solicitud de desestimación por falta de jurisdicción y oposición a que se expidiera el auto. En esencia, argumenta que carecemos de jurisdicción para conocer el recurso de revisión porque: (1) el recurrente no adhirió al mismo el sello forense requerido por el Art. 11 de la Ley Núm. 43 de 14 de mayo de 1932 (4 L.P.R.A. sec. 783), creadora del Colegio de Abogados de Puerto Rico; (2) el apéndice del recurso incumple fatalmente con la Regla 17(f) de nuestro reglamento, 4 L.P.R.A. Ap. I-A, y el mismo no fue notificado a la honorable Comisión. Arguye que aun asumiendo la capacidad jurídica del recurrente para instar el recurso de autos, la decisión de la Comisión que le concede cubierta al patrono es jurídicamente correcta.

El 29 de julio de 1986 decidimos revisar. Las partes han comparecido y han sostenido sus respectivas posiciones. Resolvemos.

## II

Este Tribunal tiene jurisdicción para considerar el recurso del obrero recurrente.

Primero, en vista de que el obrero recurrente adhirió el sello forense en su primer escrito judicial (demanda de daños y perjuicios contra el patrono), cumplieron sus abogados con su deber personal, por lo que tenemos jurisdicción para considerar el

recurso de revisión. *López Rivera v. Matos*, 101 D.P.R. 740 (1973). Segundo, de igual modo cumplió con la citada Regla 17(f) de nuestro reglamento aun cuando no era parte del procedimiento ante la Comisión. Tercero, no venía obligado a notificar su recurso de revisión a dicho organismo dada la función de la Comisión como tribunal apelativo a nivel administrativo. Art. 11 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 12.

También tenemos jurisdicción para revisar las determinaciones y resoluciones de la Comisión sobre patrono asegurado que han sido dictadas sin jurisdicción por dicho foro. Art. 11 de la Ley de Compensaciones por Accidentes del Trabajo, *supra; cf. Gerena v. Lamela*, 79 D.P.R. 578 (1956).

## III

Bajo las circunstancias en autos, carecía de jurisdicción la Comisión para revocar la determinación de patrono no asegurado hecha por el F.S.E. Esa determinación del F.S.E. había advenido final, firme e inapelable una vez transcurrido el término jurisdiccional de treinta (30) días dispuesto en el citado Art. 10 de la Ley de Compensaciones por Accidentes del Trabajo para que el patrono apelara la determinación que lo declaraba no asegurado.

Como vimos, el 5 de julio de 1985 el Administrador notificó al patrono su determinación con relación al accidente del obrero recurrente. La alegada reconsideración presentada por el patrono el 1ro de octubre de 1985 ante la División del F.S.E. no tuvo ningún efecto legal. Dicha comunicación no interrumpió el término jurisdiccional para apelar a la Comisión.[2]

Por los fundamentos expuestos se dicta sentencia que revoca las resoluciones de la Comisión emitidas el 15 de abril y 5 de junio de 1986, y se declara a J. Pérez, Inc. patrono asegurado para fines del accidente de autos.

---

[2] La conclusión a la cual arribamos hace innecesario que pasemos juicio sobre la corrección de las resoluciones de la Comisión.

Así lo ordena y manda el Tribunal y certifica el señor Secretario General. Los Jueces Asociados Señores Rebollo López y Hernández Denton disienten sin opinión. El Juez Asociado Señor Negrón García se inhibió y el Juez Asociado Señor Alonso Alonso emitió voto particular de conformidad.

*(Fdo.)* Francisco R. Agrait Lladó
*Secretario General*

—O—

Voto particular y de conformidad del Juez Asociado Señor Alonso Alonso.

En Puerto Rico se ha comprometido el resarcimiento mayor disponible para los obreros bajo las normas generales del derecho civil, en casos de accidentes del trabajo, a cambio de una módica pero segura compensación estatutaria fundada en el criterio de dependencia. *Santiago Hodge v. Parke Davis Co.*, 126 D.P.R. 1 (1990). Sin embargo, para que la responsabilidad patronal sea eliminada por la inmunidad estatutaria, la ley le requiere a éste el cumplimiento estricto de unos requisitos en el pago de cubierta del seguro patronal.

El caso de autos refleja cómo el incumplimiento de tales requisitos le abre las puertas de los tribunales a un obrero que ha quedado totalmente incapacitado por un accidente del trabajo para reclamar el mayor resarcimiento posible bajo las normas generales del derecho civil. Ello nos mueve a expresarnos sobre el *status* de patrono no asegurado del recurrido.

Hace casi medio siglo expresamos en *Sucrs. de J. González v. Comisión Industrial*, 61 D.P.R. 306, 309 (1943), que:

> Difícilmente pudo haber sido la intención de la Legislatura que en cualquier época con anterioridad al vencimiento del semestre, el patrono pudiera elegir libremente el determinar si deseaba protección que sería aplicable retroactivamente al principio del semestre. Bajo tal teoría ningún sistema de seguros podría sobrevivir por mucho tiempo.

En el caso de autos esas expresiones cobran plena virtualidad y vigencia.

Pasemos, en primer lugar, a considerar los reparos jurisdiccionales del patrono al recurso instado por el obrero ante nos así como la limitación jurisdiccional del remedio concedido por la Comisión Industrial de Puerto Rico (la Comisión) a dicho patrono.

Los hechos están claramente reseñados en la sentencia de este Tribunal.

I

Alega el patrono que carecemos de jurisdicción para considerar el recurso del obrero porque éste no incluyó el sello forense exigido por el Art. 11 de la Ley Núm. 43 de 14 de mayo de 1932 (4 L.P.R.A. sec. 783).

El Art. 11 de la Ley del Colegio de Abogados dispone que:

> Será deber de todo abogado adherir *al primer escrito* que presente en *cualquier acción o procedimiento judicial* un Sello que el Colegio adoptará y expedirá por valor de un (1) dólar *y hasta tanto se hubiere adherido dicho sello no podrá radicar ese escrito.* (Énfasis suplido.)

Nos hemos expresado sobre este deber personal del abogado en diversas circunstancias. De un análisis de nuestros pronunciamientos al respecto, concluimos que está firmemente establecido que: (a) cuando la Asamblea Legislativa enmendó el Art. 11 de la Ley Núm. 43, *supra*, en 1939 para incluir la frase "y hasta tanto se hubiere adherido dicho sello no podrá radicar ese escrito", hizo del cumplimiento de ese deber impuesto al abogado una condición precedente a la presentación del documento por el Secretario del tribunal (*De Soto v. Clínica Industrial*, 70 D.P.R. 850, 855 (1950); *López Rivera v. Matos*, 101 D.P.R. 740 (1973)); (b) *el deber del abogado de adherir el sello surge sólo una vez* —mientras sea el mismo abogado el que está representando a la parte, no es preciso volver a adherir el sello ni aun en la etapa apelativa del caso (*López Rivera v. Matos*, supra, pág. 746)— y (c) este deber se extiende a los casos de apelación o revisión de sentencia (*López*

*Rivera v. Matos*, supra; Calderón y Rivé, *Manual de Procedimientos Apelativos*, San Juan, Ed. C. Abo. P.R., 1987, pág. 21).

Nos enfrentamos a la interpretación de este deber en la revisión judicial directa de la decisión de una agencia administrativa. En el escrito de revisión judicial de la decisión administrativa, si es el primer escrito que presenta el abogado ante el tribunal, debe adherírsele el sello forense. *Ese no es el caso en el procedimiento que nos ocupa.* Aquí, ante la finalidad y firmeza de la decisión del Fondo del Seguro del Estado (F.S.E.) y la inercia del patrono, el obrero instó una acción civil de daños y perjuicios. *Ese fue su primer escrito en el procedimiento judicial. Allí estuvo representado por los mismos abogados que ahora lo representan. La estrecha relación y dependencia que guarda esa acción con la particular revisión directa en este caso —donde se alega la nulidad del trámite ante la Comisión—* nos lleva a concluir que al adherir el sello forense a la demanda de daños y perjuicios cumplieron los abogados del obrero con su deber personal.

Sostiene el patrono que carecemos de jurisdicción para conocer el recurso de revisión de autos por razón de que el apéndice del mismo incumple con la Regla 17(f) de nuestro reglamento, 4 L.P.R.A. Ap. I-A, ya que el mismo omite incluir la moción de desestimación debido a falta de jurisdicción instada por el patrono ante la Comisión. Baste decir que el recurrente cumplió sustancialmente con este requisito *a pesar de que no fue parte* en el procedimiento ante la Comisión. Los documentos incluidos en el apéndice fueron suficientes para ponernos en condiciones de expedir el auto.

Por otro lado, sostiene el patrono que por no haber notificado el obrero el recurso a la Comisión, carecemos de jurisdicción. Según se desprende del propio recurso, la solicitud de revisión no fue notificada a la Comisión dentro del término de quince (15) días para revisar. La Regla 13.3 del Reglamento Interno de Procedimientos de la Comisión Industrial (Reglamento de la Comisión) de 14 de marzo de 1984 dispone que así se haga:

Al momento de formalizar el recurso de revisión, el recurrente deberá notificar con copia de la solicitud del recurso de revisión a la Comisión Industrial y a la parte recurrida dentro del término para solicitar dicha revisión, en la forma prescrita en las Reglas de Procedimiento Civil de Puerto Rico. Cuando la notificación se hiciere por correo, deberá hacerse por correo certificado con acuse de recibo; *disponiéndose que la falta de dicha notificación a la Comisión Industrial y a la parte recurrida, priva de jurisdicción al Tribunal Supremo de Puerto Rico para conocer del recurso.* (Énfasis suplido.) Caso Núm. CE-86-435, Parte I, Apéndice de la Solicitud de desestimación por falta de jurisdicción y memorando en oposición a que se expida el auto de revisión, págs. 41–42.

La Regla 20(a) de nuestro reglamento dispone:

(a) El auto de revisión para revisar directamente actuaciones de funcionarios y agencias administrativas se regirá por las leyes especiales que autorizan su expedición en cada caso, y en todo lo que no sea claramente incompatible con dichas leyes especiales se regirá por las disposiciones de este Reglamento, especialmente por las Reglas 17 a la 20, ambas inclusive. Las referencias en dichas reglas al "tribunal de instancia" se entenderán como referencias al funcionario o agencia administrativa en cuestión. Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. I-A.

El Art. 11 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 12, regulador de la revisión judicial de las decisiones de la Comisión, guarda silencio sobre la notificación del recurso a la Comisión. Ante ese silencio, el recurrente propone que apliquemos supletoriamente la Regla 20 del reglamento de este Tribunal, *supra,* y concluyamos que en estos casos la Comisión es "el tribunal de instancia" a quien no hay que notificar.

En el caso ante nos la ley especial no requiere que se le notifique a la Comisión el recurso de revisión.[1] La razón es sencilla. *La Comisión actúa como tribunal apelativo* y no es parte en dicho procedimiento. Véanse: Regla 17 de nuestro

---

[1] Contrario a la notificación al Secretario de Salud que en casos de certificados de necesidad y conveniencia es de estricto cumplimiento, *Ruiz Hernández v. Mahíques,* 120 D.P.R. 80 (1987), aquí la Comisión Industrial de Puerto Rico (la Comisión) no es parte interesada en las decisiones del tribunal revisor. Las funciones de uno y otro organismo son diferentes.

reglamento, 4 L.P.R.A. I-A; *Crowell v. Benson*, 285 U.S. 22 (1932); *Montaner Admor. v. Comisión Industrial*, 51 D.P.R. 460 (1937); *Juan Bigas Sucrs. v. Com. Industrial*, 71 D.P.R. 336 (1950). Véase, además, *Torres Rivera v. Comisión Industrial*, 85 D.P.R. 620, 622 (1962).

La Comisión no tiene facultad, mediante reglamento, para privar de jurisdicción a este Foro. La delegación de sus poderes no puede ser tan amplia. Según la citada Regla 13.3 del Reglamento de la Comisión, la falta de notificación del recurso a ésta —de acuerdo con la Regla 53.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, y dentro de los quince (15) días dispuestos en el Art. 11 de la Ley de Compensaciones por Accidentes del Trabajo, *supra*— *priva* de jurisdicción a este Tribunal. A falta de disposición clara en la ley, no podemos avalar esa regla como válida.

En su consecuencia y aplicando lo dispuesto en la Regla 20 de nuestro reglamento, *supra*, forzoso es concluir que no es necesario que el recurrente notifique a la Comisión con copia de su escrito. Como organismo cuasis judicial —11 L.P.R.A. sec. 8; *Wiscovitch v. Comisión Industrial*, 99 D.P.R. 651 (1971); *Caraballo v. Comisión Industrial*, 51 D.P.R. 161 (1937)— recibe la notificación del recurso de parte del Secretario de este Tribunal como si fuera el tribunal de instancia. Véase B. Schwartz, *Administrative Law*, 2da ed., Boston, Little, Brown and Co., 1984, págs. 14–15.

Advertimos que el recurso de revisión de las determinaciones de la Comisión es de la naturaleza de un *certiorari* especial —véase *Maldonado v. Comisión Industrial*, 57 D.P.R. 730, 733 (1940)— y no de una apelación (*cf. Morales Rodríguez v. Comisión Industrial*, 110 D.P.R. 353, 355 (1980)).

Por último, sostiene el patrono que el obrero carecía de capacidad jurídica para comparecer ante la Comisión y, por lo tanto, carece de capacidad jurídica para instar el presente recurso de revisión. El obrero en este caso tiene capacidad jurídica para instar este recurso.

Las resoluciones de la Comisión *dictadas sin jurisdicción* —señalamiento levantado por el recurrente— son cuestiones

revisables por este Tribunal por constituir errores de derecho bajo el Art. 11 de la Ley de Compensaciones por Accidentes del Trabajo, *supra*. Véanse, además: Regla 20 del Reglamento del Tribunal Supremo, *supra*; S.P. Amadeo, *La revisión judicial de la Comisión Industrial de Puerto Rico*, 15 Rev. Jur. U.P.R. 121, 128–135 (1946). Ello sin importar que el obrero no haya sido parte[2] en los procedimientos ante la Comisión ya que, en esencia, lo que se levanta es la nulidad de las mismas. La desestimación de la acción civil (concedida por el Art. 15 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 16), debido a la nueva determinación de la Comisión, representa un interés suficiente del obrero, digno de protección mediante el recurso de revisión judicial. Tal derecho cobró vida al notificársele al patrono de la decisión del F.S.E. No puede despojarse al obrero de ese derecho, consolidado cuando dicha decisión adviene final, firme e inapelable y es ejercitado confiando en las actuaciones del F.S.E. y ante la inercia e indiferencia del patrono, sin que se le permita ser oído. Ante tales circunstancias, la Comisión debió permitir la intervención del obrero. *Cf. Gerena v. Lamela*, 79 D.P.R. 578, 580–581 (1956).

## II

Ahora bien, ¿tenía jurisdicción la Comisión para entender en la apelación interpuesta por el patrono? Consideramos que no. Veamos.

El Art. 10 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 11, y la Regla 5(1) de la Sec. 2(a) del Reglamento de la Comisión, establecen de forma clara y expresa que "en los casos de patronos no asegurados, tanto el obrero como el patrono podrán acudir a la Comisión Industrial una vez declarado no asegurado el patrono por el Administrador, *teniendo el patrono un término de treinta (30) días para apelar de la*

---

(2) *En este caso el obrero levantó la cuestión jurisdiccional ante la Comisión. Debió ese organismo permitir su intervención. Además, el obrero solicitó la reconsideración de la decisión de la Comisión en tiempo. Cf. Plaza Ríos v. F.S.E.*, 110 D.P.R. 727 (1981).

*decisión del Administrador declarándolo no asegurado . . .".* (Énfasis suplido.)

*Ese término es jurisdiccional.* Transcurrido el mismo, la Comisión carece de jurisdicción para revisar la decisión del F.S.E. Esa ha sido la interpretación administrativa y judicial de dicho término. Véanse: *Sucn. Marcos Torres Péres v. Fondo del Seguro del Estado,* 14 D.C.I. 913, 929 (1949); *Ortiz v. Comisión Industrial,* 54 D.P.R. 694, 696 (1939); *Salvador Pérez Cortés (patrono); Isaías Bermúdez Lugo (obrero) v. Fondo del Seguro del Estado,* 15 D.C.I. 335, 340 (1950).

En *Ortiz v. Comisión Industrial,* supra, por no existir una regla válida de la Comisión que fijara el plazo para apelar ante dicho organismo, consideramos en tiempo la apelación ejercitada por un obrero ciento setenta y tres (173) días después de que el Administrador del Fondo del Seguro del Estado (Administrador) emitiera su decisión. Un año después, en *Montaner Admor. v. Comisión Industrial,* 57 D.P.R. 391, 393 (1940), dimos paso a que unos menores apelaran la determinación del F.S.E. en la que se decretó que el caso no era compensable luego de transcurridos los treinta (30) días fijados por una regla válida del reglamento de la Comisión, ya que los menores nunca fueron debidamente notificados de la resolución adversa del Administrador. Si bien se notificó a su madre, este Tribunal consideró que tal notificación no era la "que debió hacerse a sus hijos menores".

Estas decisiones las emitimos antes de que entrara en vigor la Ley Núm. 43 de 22 de abril de 1942 donde, por vez primera, la ley dispuso expresamente un término de treinta (30) días para que el patrono apelara ante la Comisión las decisiones del F.S.E. que lo declaraban patrono no asegurado.

El carácter jurisdiccional de este término surge del lenguaje utilizado por el legislador en el estatuto. La disposición establece que tiene *"el patrono un término de treinta (30) días para apelar . . .".* Ante un lenguaje tan claro no puede interpretarse de otra forma que no sea la de un deber afirmativo cuyo incumplimiento extingue el derecho. No tiene discreción el patrono ni la agencia administrativa para alterar dicho término

apelativo dada una notificación válida de la decisión del F.S.E. Tan es así que la propia notificación claramente advierte a las partes su derecho a apelar ante la Comisión para evitar la firmeza de la decisión. Si eso lo unimos al hecho de que la ley no provee un mecanismo para reconsiderar las decisiones del Administrador, patente es la conclusión de que el término de treinta (30) días que la ley le concede al patrono para apelar la decisión del Administrador donde se le declara patrono no asegurado, es jurisdiccional.

De ahí que en *González Saldaña v. Comisión Industrial,* 89 D.P.R. 267, 274 (1963), dijimos *inter alia,* que en la ley se "establecen *términos expresos* para la apelación a la Comisión Industrial de las decisiones del Administrador en el Art. 10 . . .". (Énfasis suplido.)

Siendo ésta la situación, las resoluciones de la Comisión en este caso son ineficaces por carecer de jurisdicción para emitirlas. Lo único que podía hacer la Comisión era así declararlo sin entrar en los méritos de la cuestión que tenía ante sí. *Gual v. Tribl. de Distrito,* 70 D.P.R. 305 (1950); *Autoridad Sobre Hogares v. Sagastivelza,* 71 D.P.R. 436, 439 (1950); *Dalmau v. Quiñones,* 78 D.P.R. 551 (1955); *Cardona v. Comisión Industrial,* 79 D.P.R. 672, 679 (1956).

Nos parece inútil el intento del patrono de concederle jurisdicción a la Comisión. Al momento de instar su escrito de "apelación" habían transcurrido ciento un (101) días desde que el Administrador notificó su decisión. J. Pérez, Inc. aduce como justificación para su demora el que la notificación del F.S.E. fue recibida por una empleada temporera, quien la archivó sin informarle nada a la persona encargada de atender los asuntos del seguro del F.S.E.; que tan pronto tuvo conocimiento de la notificación de la decisión, remitió la carta solicitando su *revisión administrativa*" el 1ro de octubre de 1985 (ochenta y seis (86) días luego de la notificación). El 4 de octubre la División de *Status* Patronal del F.S.E. (la División) le contestó la carta reafirmando la decisión de 5 de julio de 1985. El patrono toma, a su conveniencia, esa fecha para iniciar el cómputo de los treinta (30) días para apelar a la Comisión de la decisión del F.S.E. que lo declaró

patrono no asegurado para propósitos del accidente en este caso. Según el patrono, la carta de 4 de octubre constituye una "*reconsideración*" de la decisión. Nada más lejos de la verdad.

La estructura general de la Ley Núm. 45 de 18 de abril de 1935 establece que el Administrador resuelva las cuestiones en primera instancia —*González v. Comisión Industrial*, 60 D.P.R. 622 (1942); *Cordero, Admor. v. Comisión Industrial*, 61 D.P.R. 466 (1943); Amadeo, *supra*, págs. 124–125— y luego la Comisión las revise (Amadeo, *supra*; A. De Jesús Matos, *Los Accidentes del Trabajo*, San Juan, Ed. Baldrich, 1945, págs. 142–150). Esto es así ya que la Comisión, en el ejercicio de sus funciones revisoras de naturaleza cuasi judicial, representa al interés público. Art. 6(b) de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 8(b).

En ese esquema de la Ley de Compensaciones por Accidentes del Trabajo, el legislador no le concedió expresamente la facultad al Administrador para revisar sus propias decisiones. *Cf.* Art. 10 de la citada ley, *supra*.

Ahora bien, es incuestionable que un organismo administrativo tiene facultad para revisar y considerar sus decisiones en cualquier momento cuando sea necesario *para corregir un error* aun cuando la ley no lo autorice expresamente. *Sucn. Bravo v. Srio. de Hacienda*, 106 D.P.R. 672, 675 (1978); *Alers v. Tribunal Superior*, 83 D.P.R. 701, 705 (1961); *Martínez v. Tribunal Superior*, 83 D.P.R. 717, 721 (1961). Sin embargo, como dijimos en *Martínez v. Tribunal Superior*, supra, pág. 722:

> . . . el poder que tiene un organismo administrativo para modificar sus órdenes y resoluciones en cualquier momento, no debe usarse de tal forma que afecte la estabilidad de la política enunciada por el propio organismo administrativo. Tan amplia facultad debe ser usada con circunspección e informada discreción.

El F.S.E. admite, en su alegato, que "como institución comprende . . . la necesidad de fijar el procedimiento a seguir cuando se solicita reconsideración de una decisión inconstitucional como es la de patrono no asegurado". Caso Núm. CE-86-435, Parte I,

Alegato del Fondo del Seguro del Estado, pág. 9. Tal procedimiento no existe en la actualidad.

Aun cuando el Administrador tenga facultad para revisar sus decisiones en cualquier momento, las circunstancias de este caso no aconsejaban ese curso de acción. En primer lugar, la decisión del Administrador había advenido final y firme al solicitarse la "reconsideración". *El obrero, confiado en esa decisión institucional y al amparo del Art. 15 de la Ley de Compensaciones por Accidentes del Trabajo, supra, había instado acción en daños y perjuicios contra el patrono. Alterar la decisión del F.S.E. afectaría la política pública así enunciada por ese organismo.*

En segundo lugar, las circunstancias de este caso son distinguibles de las presentes en *Sucn. Bravo v. Srio. de Hacienda,* supra; *Alers v. Tribunal Superior,* supra, y *Martínez v. Tribunal Superior,* supra. En *Sucn. Bravo v. Srio. de Hacienda,* supra, las comunicaciones de Hacienda a la sucesión no habían sido remitidas como lo exigía la ley; aquí hubo una notificación válida de la decisión del F.S.E. En *Alers v. Tribunal Superior,* supra, la propia ley de la Comisión de Servicio Público permitía la reapertura del caso si existía justa causa; aquí la ley no concede discreción al Administrador para reconsiderar su decisión ni el F.S.E. cuenta con un procedimiento a seguir en esos casos. En *Martínez v. Tribunal Superior,* supra, al igual que en el citado caso *Alers v. Tribunal Superior,* la ley le concedía discreción al Administrador de Estabilización Económica para, de tiempo en tiempo, enmendar o revocar sus órdenes si se trataba de un mero error de cómputo. Aquí la decisión del F.S.E. era válida y correcta.

Por ser improcedente la "reconsideración", no podía la Comisión válidamente computar los treinta (30) días para apelar desde que la División contestó la misiva remitida por el patrono y asumir jurisdicción en este caso. Además, la decisión del F.S.E. de 5 de julio de 1985 era la correcta.

## III

Según las disposiciones de la ley y la interpretación judicial y administrativa de las mismas, el patrono no estaba cubierto por el seguro para la fecha del accidente del recurrente.

El Art. 25 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 26, dispone, *inter alia*, que "[s]i un patrono regular, eventual o temporero deja de pagar el total de las cuotas preliminares o adicionales que le fueran impuestas legalmente dentro del término que le señalare el Administrador, éste *podrá* concederle una prórroga de treinta (30) días para que el patrono efectúe el pago total, y dicho pago total será un requisito indispensable para que el Administrador pueda darle efectividad a cualquier póliza de seguro". (Énfasis suplido.)

El Administrador recauda las cuotas de cada patrono por *semestres adelantados* cuando se trata, como en este caso, de patronos permanentes que no sean instrumentalidades del gobierno estatal. 11 L.P.R.A. sec. 26.

El Art. 27 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 28, dispone la fecha de vigencia del seguro una vez las primas correspondientes son satisfechas en los plazos y en las cantidades fijadas por el Administrador en su notificación de cobro de primas.

> El seguro de cada patrono por el estado comenzará a regir *inmediatamente después de que haya sido archivada en las oficinas del Administrador del Fondo [del Seguro] del Estado su nómina o estado acompañado del importe de la cuota* que corresponda al tanto por ciento de los jornales declarados en dicho estado, de acuerdo con los tipos fijados por el Administrador; *Disponiéndose, que cualquier accidente que ocurra antes de verificarse el pago será considerado como un caso de patrono no asegurado a menos que el patrono verifique el pago dentro del término fijado por el Administrador del Fondo [del Seguro] del Estado,* en los cuales casos el seguro empezará a regir desde la fecha en que el patrono archivó la nómina o estado, en la oficina del Administrador. (Énfasis suplido.)

El pago por el patrono de la cuota impuesta por el F.S.E., dentro del término que le sea concedido o dentro de su prórroga,

es condición precedente a la vigencia del seguro, según el referido Art. 27. De Jesús Matos, *op. cit.*, pág. 70. La póliza empieza a regir al efectuarse el pago y no antes. *Montaner v. Comisión Industrial,* 59 D.P.R. 396 (1941).

La obligación legal del patrono es pagar dicha cuota e incluir cualquier cuota adicional para un año fiscal ya terminado. *Sucrs. de J. González v. Comisión Industrial,* 61 D.P.R. 306 (1943).

El efecto de no pagar en el plazo concedido la prima completa del semestre de la póliza y/o la cuota adicional para un año fiscal ya terminado es dejar al descubierto al patrono contra accidentes ocurridos durante ese semestre. *Sucrs. de J. González v. Comisión Industrial,* supra; *Francisco Montalvo Nieves (lesionado); Canteras Morales, Inc. (patrono no asegurado) v. Fondo del Seguro del Estado,* 22 D.C.I. 179, 182 (1970); *Industria Brazo Fuerte, Inc. v. Fondo del Seguro del Estado,* 15 D.C.I. 127, 128 (1950); *Pérez Cortés v. Fondo del Seguro del Estado,* 15 D.C.I. 335, 339 (1950); *Benedicta Sanjurjo Calderón v. Fondo del Seguro del Estado,* 15 D.C.I. 702, 704 (1950).

IV

En el caso de autos el obrero recurrente sufrió el accidente el 24 de diciembre de 1982. El 6 de octubre de 1982 el F.S.E. había enviado la notificación de cobro de primas de seguro obrero correspondiente a la liquidación final del año fiscal 1981–1982 y prima preliminar del año fiscal 1982–1983. El total de la prima correspondiente a la liquidación final era de $4,648.26 y su pago vencía el 20 de octubre de 1982. El total de la prima correspondiente a la prima preliminar era de $3,540.75 y vencía el 31 de enero de 1983. *El patrono acepta que recibió la notificación de cobro de primas.* Aun así, no pagó la liquidación final de 1981–1982 en la fecha señalada ni solicitó prórroga para el pago. El patrono pagó la cantidad de $3,540.75, que correspondía a la prima preliminar para 1982–1983, el 17 de noviembre de 1982. Hizo un segundo pago para pagar la liquidación final por la cantidad de $4,648.26 *el 29 de diciembre de 1982, luego de ocurrido el accidente.*

De esos hechos se desprende que a la fecha del accidente, el patrono era "no asegurado". Éste pagó de forma incompleta y fuera del término concedido por el Administrador la liquidación final de 1981–1982, semestre donde ocurre el accidente. Cuando el patrono paga de forma incompleta y fuera de los términos concedidos por el Administrador, no está cubierto por el seguro durante el semestre que así paga. El Administrador acredita el pago parcial al semestre en cuestión pero no entra en efecto la póliza. No es hasta que se completa el pago total del semestre que prospectivamente entra en vigor el seguro. Una decisión en contrario pondría en peligro la solvencia económica del F.S.E.

La propia estipulación de hechos entre el patrono y el F.S.E., adoptada luego por la Comisión, sustenta nuestra conclusión. En la Relación de Hechos Núm. 8 se señala:

El Asegurador recibió el importe del primer plazo por la suma de $4,648.26 el 29 de diciembre de 1982, completándose con dicho pago la totalidad de la prima impuesta al Patrono J. Pérez para el año póliza 1982–1983. Caso Núm. CE-86-435, Parte I, Solicitud de revisión, Apéndice 2.

Ya para ese entonces había ocurrido el accidente.

Contrario a la contención del patrono, lo resuelto en *Plaza Ríos v. F.S.E.*, 110 D.P.R. 727 (1981), no le es aplicable. Allí el patrono había recurrido en tiempo ante la Comisión para revisar la determinación del F.S.E. que declaraba al patrono "no asegurado". En el caso de autos ese es el meollo de su problema.

Si bien reconocimos en *Plaza Ríos v. F.S.E.*, supra, que de existir circunstancias extraordinarias el patrono puede acudir ante la Comisión en *solicitud de relevo* de la determinación que le declaró patrono "no asegurado", tales circunstancias no están presentes en el caso ante nos. En *Plaza Ríos v. F.S.E.*, supra, la tardanza en el pago se debió a que el patrono estaba fuera de Puerto Rico porque su hija sufrió un accidente. En su ausencia, su secretaria quedó a cargo del negocio pero no podía autorizar el cheque de pago. Al regresar, el patrono no miró el aviso sino que confió en el talonario del cheque de pagos anteriores. Por error

envió una cantidad que diferenciaba en $2.58 de la cantidad requerida por el F.S.E. en el aviso de pago de primas.

En el caso de autos, la deficiencia en el pago parcial es de $1,107.51 y el patrono *conocía* desde junio de 1982 las cantidades a pagar. Su argumento de que por error involuntario envió el pago correspondiente el segundo semestre no nos convence. La interpretación administrativa se ha negado a reconocer como excusas para pagar a destiempo, entre otras, las condiciones especiales en la situación de la industria (*Industria Brazo Fuerte, Inc. v. Fondo del Seguro del Estado*, supra); las dificultades que existen en determinada oficina de correos (*Pérez Cortés v. Fondo del Seguro Estado*, supra; un error clerical de la empleada que recibe el pago (*Jose Ferrer Betancourt v. Fondo del Seguro del Estado*, 16 D.C.I. 238 (1953)), y que el cheque en pago de las primas no sea honrado por el banco debido a falta de fondos (*Francisco Montalvo Nieves (lesionado); Canteras Morales, Inc. (patrono no asegurado) v. Fondo del Seguro del Estado*, supra). La comisión también se ha negado a dar cubierta a un accidente ocurrido en un semestre no cubierto cuando el patrono paga los dos semestres conjuntamente, *Benedicta Sanjurjo Calderón v. Fondo del Seguro del Estado*, supra.

Por lo antes expuesto, expreso mi conformidad con la sentencia que revoca las resoluciones de la Comisión emitidas el 15 de abril y 5 de junio de 1986.